UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| ELVIRA GONZALES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:06-CV-104-C |
| | § | ECF |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

Plaintiff Elvira Gonzales seeks judicial review of a decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court has reviewed the administrative record and the arguments of the parties under the standard set forth under 42 U.S.C. § 405(g) and has determined that the Commissioner's decision is supported by substantial evidence, was reached through the application of proper legal standards, and should be affirmed.

**I.   Discussion**

The Administrative Law Judge (ALJ) found at step five of the sequential disability analysis, 20 C.F.R. §§ 404.1520, 416.920, that Gonzales was not disabled because she could perform jobs existing in significant numbers in the national economy despite her

impairments. (Tr. 27.) Gonzales brings two points of error. She argues that substantial evidence does not support the Commissioner's step three finding that her mental impairment does not meet or equal Listing 12.05, the listing for mental retardation in the regulations.[1] She also argues that substantial evidence does not support the ALJ's rejection of an opinion offered by one of her physicians.

In support of her first point of error Gonzales argues that the ALJ erred in discounting objective medical evidence showing that her IQ was assessed at 59. Even if the court were to assume *arguendo* that the ALJ erred in analyzing the evidence of Gonzales's IQ score, the court must find that substantial evidence supports his ultimate conclusion that her mental impairments do not meet the criteria of Listing 12.05. More than a low IQ score is required to meet the criteria of Listing 12.05. The introductory paragraph of Listing 12.05 states in part that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05 (2006). The Fifth Circuit Court of Appeals recently acknowledged in an unpublished opinion that the claimant must satisfy the requirements of the introductory paragraph to Listing 12.05 and must specifically show that he has deficits in adaptive functioning in order to be found disabled under the listing. *Arce v. Barnhart*, No. 05-50935, 2006 WL 1765899, at *1 (5th Cir. Jan 22, 2006).

---

[1] Disability is conclusively presumed at step three of the sequential disability analysis if a claimant's impairment(s) meet or equal the criteria of one of the listed impairments in the Commissioner's regulations. *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000) (citation omitted).

The evidence does not show that Gonzales has deficits in adaptive functioning. The explanatory section of the Listings in the regulations describes adaptive functions as activities such as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C)(1). Addison E. Gradel, Ed.D., indicated that Gonzales' capacity to use public services and the telephone were in the higher average range and that she was capable of managing Social Security benefit payments in her own interest and could determine the correct change due after a purchase. (Tr. 183-84, 249.) Gonzales reported that she was able to dress, bathe, and care for her own hygiene; prepare meals such as chicken and dumplings, rice and beans, and tortillas for herself and others; shop and handle her own finances; care for her grandchildren, ages two and nine, while her son and daughter-in-law work; perform housekeeping chores at her home; and maintain friendships. She also previously worked as a farm laborer and in housekeeping. (Tr. 123, 180, 249, 529-31; 536, 538-39, 544.) In addition, a consulting psychologist found that while Gonzales' IQ scores were listing level, she did not show deficits in adaptive functioning to meet the criteria of Listing 12.05. (Tr. 299.) The evidence does not show that Gonzales functioned with deficits in adaptive functioning.

The claimant bears the burden of proving with medical evidence that his impairment(s) meet or equal each of the specified medical criteria of a listing. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). Gonzales has not met this burden; she has not shown that her impairments meet all the criteria required under Listing 12.05.

Therefore, her argument that the ALJ erred at step three of the sequential disability analysis must be rejected.

In her second point of error Gonzales argues the ALJ erred in rejecting the opinion of Kathleen Stanley, M.D. Citing *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000) and *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000), she argues the ALJ must provide good cause for rejecting the opinion of a treating physician and must assess the factors set forth under 20 C.F.R. § 416.927(d) in assessing such opinions.

On July 28, 2004, William Phelan, PAC, Dr. Stanley's physician's assistant, completed a "Mental Impairment Questionnaire (RFC & Listings)" which Dr. Stanley signed and on which it was indicated in part that Gonzales suffered from major depression, post traumatic stress disorder, borderline intelligence, and emphysema and that her prognosis was fair. (Tr. 418–24; *see* 418, 420.) Phelan also completed a chart on which boxes were checked to indicate opinion in regard to the reduction in capacity caused by Gonzales' medical conditions as well as opinion regarding Gonzales' mental abilities and aptitudes and her functional limitations. (Tr. 421-24.) The chart indicates in part that Gonzales exhibits good to fair abilities and aptitudes needed to perform unskilled work; exhibits poor to no mental abilities needed to perform semi-skilled and skilled work; exhibits fair abilities in areas such as interacting appropriately with the general public, maintaining socially appropriate behavior, traveling in unfamiliar places, and using public transportation; and exhibits slight restrictions in activities of daily living, moderate difficulties in maintaining social functioning, frequent deficiencies in concentration; and had experienced repeated

4

episodes in deterioration or decompensation. (Tr. 421-23.)

As Judge Green noted, Dr. Stanley had seen Gonzales only once during the time in which she claimed she became disabled; the form indicates Dr. Stanley saw Gonzales on July 20, 2004, just before she completed the form and had last seen her before that in November 2001, which was two years before she claimed she became disabled in October 2003. (Tr. 23, 142, 418.) Therefore, Dr. Stanley had examined Gonzales only once during the period in which she claimed she was disabled. The requirements in *Loza* and *Newton*[2] apply only to opinions offered by treating physicians. Dr. Stanley was not Gonzales' treating physician during the time in which Gonzales claimed she was disabled.[3] Nonetheless, in accordance with *Loza and Newton*, the ALJ provided good cause for declining to adopt the physician's opinion. The ALJ found that Dr. Stanley's opinions were based on a remote history and Gonzales' subjective complaints at a single examination during the relevant period of time and that the opinions were not corroborated by the remainder of the evidence. (Tr. 23.)

---

[2] In *Loza* the court cited *Newton* and other authorities which hold that the ALJ may give less weight to a treating physician's opinion when good cause is shown. *Loza*, 219 F.3d at 395. In *Newton*, the court held, *inter alia*, that when an ALJ determines that a treating source opinion is not entitled to controlling weight, he or she must evaluate the opinion under the factors set forth in 20 C.F.R. §§ 404.1527(d), 416.927(d). *Newton*, 209 F.3d at 456.

[3] The regulations define "treating physician" as the clamant's physician, psychologist, or other acceptable medical source who provides the claimant, or has provided the claimant, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502, 416.902. The regulations explain that an "ongoing treatment relationship" may be found when the medical evidence establishes that the claimant sees, or has seen, the source with a frequency consistent with the accepted medical practice for the type of treatment and/or evaluation required for the particular medical condition(s). *Id*. A physician is not considered to be a treating physician if the relationship with the physician is based solely on the claimant's need to obtain a report in support of his claim for disability. *Id*.

5

In addition, the ALJ considered the regulatory factors set forth under 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ acknowledged that Dr. Stanley was a mental health provider; acknowledged the frequency, length, nature, and extent of the doctor-patient relationship between Dr. Stanley and Gonzales; and considered whether the opinions at issue were consistent with the record as a whole. (Tr. 23.) There was therefore no error, and the ALJ's determination that Dr. Stanley's opinions were not entitled to controlling weight, as well as the ALJ's ultimate conclusion of non-disability, is supported by substantial evidence found in testimonial evidence from Gonzales and a medical expert as well as medical evidence from treating and examining physicians. (*See, e.g.*, Tr. 171, 177, 180, 249, 299, 388, 398, 402, 405, 423, 540-41.)

## II.    Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Gonzales' appeal with prejudice.

## III.    Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto*

6

*Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated:   December 22, 2006.

_____
NANCY M. KOENIG
United States Magistrate Judge